## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**RICHARD LINTHICUM**

   **Plaintiff,**

                              **CASE NO.:  8:15-cv-02825-EAK-TBM**

**v.**

**BANK OF AMERICA, NA,**
**& SPECIALIZED LOAN SERVICING, LLC**
   **Defendant.**
_____/

## SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff RICHARD LINTHICUM **("Plaintiff")** files this Complaint and brings this action against Defendant BANK OF AMERICA, NA (BOA) and SPECIALIZED LOAN SERVICING, LLC (SLS) on the grounds and the amounts set forth herein and alleges:

### I.      INTRODUCTION

1.      Plaintiff RICHARD LINTHICUM is the son of DOROTHY LINTHICUM.  DOROTHY LINTHICUM died on August 7, 2008.  Plaintiff was appointed as the personal representative of his deceased mother, DOROTHY T. LINTHICUM's estate in Pinellas County Probate case # 09-000561ES on .  Additionally, Plaintiff was the successor trustee of the Dorothy T. Linthicum Trust U/A/D May 6, 2002.  Plaintiff is a high-ranking, US military veteran, who individually, does not and did not owe any mortgage or consumer debt to BANK OF AMERICA, NA (BOA) or SPECIALIZED LOAN SERVICING, LLC (SLS).

2.      Plaintiff brings this action to recover statutorily prescribed damages for acts on the part of SLS and BOA in violation of the Telephone Consumer Protection Act of 1991, 47 U.S.C.

§ 227, *et seq.,* (hereafter "TCPA"), for acts on the part of BAC and SLS under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* (hereafter "FDCPA"), and for acts on the part of SLS and BAC under the Florida Consumer Collection Practices Act, sections 559.55, *et seq.,* Florida Statutes (hereafter "FCCPA").

## II.     FACTUAL ALLEGATIONS

### Jurisdiction and Venue

3.     Jurisdiction of this Court arises under 28 U.S.C. § 1331 and pursuant to 15 U.S.C. §1692k(d), and pursuant to 28 U.S.C. § 1367 for pendent state law claims.

4.     Venue is proper in the Middle District of Florida because the acts and transactions occurred here, Plaintiff resides here, and the Defendants, both BOA and SLS transact business here.

### Plaintiff

5.     Plaintiff is a natural person who resides in Pinellas County, State of Florida, and is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3) and a person with standing to bring a claim under the Fair Debt Collection Practices Act ("FDCPA") by virtue of being directly affected by a violation of the Act, to wit Plaintiff was the successor trustee to the  Dorothy T. Linthicum Trust Dated 5/6/2002 and has been subjected to Defendant's unlawful collection practices.

6.     Plaintiff is an "alleged debtor" as that term is defined by section 559.55(8), Florida Statutes for debts owed by his deceased mother Dorothy Linthicum.

7.     Plaintiff is a "debtor" as that term is defined by section 559.55(8), Florida Statutes for debts owed by the Trustee of the Dorothy T. Linthicum Trust Dated 5/6/2002.

8.     In relation to the collection of debts allegedly owed by Plaintiff's deceased mother, Dorothy Linthicum's and her revocable trust, which include but are not limited to: a revolving line of credit with Bank of America , a promissory note that originated with NationsBanc Mortgage Company on February 25, 1994, a  mortgage and note secured against a second residential property owned by

2

Dorothy Linthicum and a credit card debt with Bank of America.  Plaintiff has been represented by attorney JOHN GREEN,JR., ESQUIRE since on or about November 25, 2008.  At all times relevant to this action, Defendants have had actual knowledge of JOHN GREEN,JR. ESQUIRE'S contact information.

9.      On November 26, 2008, Plaintiff personally met with the Bank of America Bank Manager at the St. Petersburg, Florida Northeast Branch Office and provided the bank with a copy of Dorothy Linthicum's death certificate.

10.     Since 2008 to the present, at no time has either Defendant been able to prove that it is entitled to collect a debt against the Plaintiff.

11.     Continuously during the past five years, both BOA and SLS have repeatedly called Plaintiff and sent him debt collection letters in an attempt to collect consumer debts that he does not owe.

### Defendants

12.     At all times material hereto, Defendant BANK OF AMERICA, N.A. (hereafter "BOA"), was and is a foreign corporation, with its principal place of business in Charlotte, North Carolina. At certain times material hereto, BAC HOME LOANS SERVICING, LP, (hereafter "BAC"), was a foreign limited partnership, with its principal place of business in Calabasas, California.

13.     In or about July of 2011, BAC was merged into Defendant BOA.  Prior to the merger, Defendant BAC operated as a wholly owned subsidiary of Defendant BOA.

14.     BOA acquired, when in default, the promissory note and mortgage dated February 25, 1994 for the real property that was previously owned by Dorothy T. Linthicum, Plaintiff's deceased mother, located at 710 Placido Way NE, St. Petersburg, Florida 33704, as the successor by merger to BAC HOME LOANS  SERVICING,  LP, f/k/a Countrywide Home Loans Servicing, LP.  (**A copy of which is attached hereto as Exhibit 1.**)

15.     At all material times, BOA attempted to collect a debt related to a revolving line of credit that was first issued to both Dorothy T. Linthicum, individually, and to Dorothy T.

Linthicum, as Trustee of the Dorothy T. Linthicum Trust Dated 5/6/2002, on or about November 24, 2004 by continuing to send Plaintiff debt collection letters to his home address located at 3043 Heron PL, Clearwater, Florida 33762 through and including July 2015 and by repeatedly calling him daily.  (**A copy of the which is attached hereto as Exhibit 2.)**

16.      During the prior five years, BOA repeatedly and harassingly used its automated dialing system to call Plaintiff daily, leave pre-recorded messages and never distinguish which of the above debts it was calling about in an attempt to collect such that neither a "sophisticated consumer" or "unsophisticated consumer" would be able to prevent the ongoing abuse of being reminded daily of the death of their beloved mother. At all material times, Defendant SLS acted at the direction and control of Defendant BOA. Defendant SLS had both actual apparent authority from Defendant BOA in the collection of these alleged debts and Defendant BOA employed and/or directed and controlled Defendant SLS in regards to these complained of collection efforts at all material times.  The default on these loans took place on or before August 7, 2008.  On or before September 6, 2013, Defendant BOA assigned the defaulted loan to Defendant SLS.  The defaulted loans were assigned by Defendant BOA to Defendant SLS for collection purposes on or before September 6, 2013.  With regard to the nature of the default, Plaintiff's mother had died and the estate is believed to have no longer paid the mortgage debts referenced above, hence the allegations of default.

17.      At all material times, Defendant SPECIALIZED LOAN SERVICING, LLC (hereafter "SLS") was licensed with the state of Florida as a consumer collection agency.

18.      On or about September 6, 2013, SPECIALIZED LOAN SERVICING, LLC, allegedly acting as a third party mortgage loan servicer (hereafter "SLS"), was retained by BOA to collect the deficiency and all debts secured against decedent, Dorothy T. Linthicum's property located at 246 1st Ave. NE, St. Petersburg, Florida 33703.  (**See Composite Exhibit 3, letters from SLS to**

**Plaintiff.    SLS was a third party debt collector acting for the benefit and at the direction of BOA to collect the mortgage debt issued on September 15, 2005 to Dorothy Linthicum**).

19.    Defendant SLS is a "debt collector" as defined in Section 803(6) of the FDCPA, 15 U.S.C. § 1692a (6).

20.    Defendant SLS is a third party mortgage servicing company and debt collector who acquired Plaintiff's deceased mother's loan at issue after the loan was in default. *Williams v. Edelman*, 408 F. Supp. 2d 1261, 1266 (S.D. Fla. 2005).   Defendant SLS worked to collect a debt against Plaintiff, that Plaintiff did not owe.   These were mortgage related debts are identified by the last digits 0163 and also 6327. **(See, Exhibits 1 and 3).**The default on these loans took place on or before August 7, 2008.  On or before September 6, 2013, Defendant BOA assigned the defaulted loan to Defendant SLS.  The defaulted loans were assigned by Defendant BOA to Defendant SLS for collection purposes on or before September 6, 2013.  With regard to the nature of the default, Plaintiff's mother had died and the estate is believed to have no longer paid the deficiency of the mortgage debts referenced above, hence the allegations of default.

21.    Further, Fla. Stat. 559.72 states that "no person shall" engage in the enumerated debt collection practices.   *Williams v. Educ. Credit Mgmt. Corp*., 88 F. Supp. 3d 1338, 2015 U.S. Dist. LEXIS 23425 (M.D. Fla. 2015).  As set forth herein, both BOA and SLS engaged in unlawful debt collection practices by harassing Plaintiff via letters and calls and continuing to attempt to collect a debt that Plaintiff did not owe.

22.    At all times relevant to this Complaint, Defendants BAC, SLS and BOA have transacted business in this District and throughout the United States.

23.    At all material times, Defendant SLS acted at the direction and control of Defendant BOA. Defendant SLS had both actual apparent authority from Defendant BOA in the collection of these alleged debts and Defendant BOA employed and/or directed and controlled Defendant SLS in regards to these

complained of collection efforts at all material times.

**Defendants' Business Practices**

24.     From their offices throughout the United States Defendant SLS engages in consumer debt collection activities throughout the United States.  Defendant BOA is a national bank that performs a vast array of banking services, including mortgage and credit card loans and that also attempts to collect consumer debts against Defendant BOA's own customers.

25.     Within the four (4) year period preceding the filing of this action, Defendants BOA and SLS intentionally harassed and abused the Plaintiff and his family, on numerous occasions by its agents and representatives calling Plaintiff's cellular telephone numbers and residential telephone number several times during one day, up to five (5) times a day, and on back to back days, with such frequency as can reasonably be expected to harass. Plaintiff made complaints to both Defendants, including to Defendant BOA, including on October 30, 2012 and also on March 24, 2013. **(See, Composite Exhibit 4)**.  Plaintiff's complaints included complaints to the Federal Reserve Consumer Help electronic filing system and Plaintiff specifically named both BOA and SLS in said complaint due to the concerted nature of the collection activities between BOA and SLS in regards to Plaintiff.

26.     Defendant BOA's corporate policy is structured to continue to call individuals like Plaintiff, despite these individuals explaining to the Defendant that they had retained legal counsel with respect to such debts, whose homes were currently being foreclosed upon, had retained agents to assist with obtaining mortgage loan modifications, and/or were actively proceeding with modification agreements.  In this case, Defendant BOA was on notice that Plaintiff as Trustee and Personal Representative of the estate of his deceased mother were being represented by the law office of John L.Green, Jr. in regards to the defaulted mortgages asserted by both

6

Defendant BOA and also by Defendant SLS, on behalf of BOA.  Like BOA, Defendant SLS had a corporate policy of continuing to call alleged debtors even when Defendant SLS was on full and fair notice that the consumer was represented by legal counsel in regards to the alleged debt.

27.     Defendant BOA's corporate policy provided no means for the Plaintiff to have his cellular telephone numbers or residential telephone number removed from the call list.

28.     Defendant SLS also had a corporate policy that provided no means for the Plaintiff to have his cellular and residential phone numbers removed from the call lists from the call centers where each Defendant operates.

29.     Defendant BOA has a corporate policy to harass and abuse individuals despite actual knowledge that the called parties did not provide prior express consent to receive the calls, or had revoked such prior express consent verbally, in writing, or through retention of legal counsel. Defendant SLS also has a corporate policy of continuing to call consumers who have revoked consent to receive "robo-calls" or automated telephone dialing system calls.

30.     Defendant BOA's representatives followed its corporate policies when attempting to communicate with the Plaintiff in connection with the debt at issue.    Likewise, Defendant SLS followed a corporate policy when attempting to communicate with Plaintiff in connection with the debt at issue.

31.     Defendant BOA has been the recipient of numerous complaints from debtors, alleged debtors, and non-debtors across the country, similar to those alleged in this action by Plaintiff.  *See Goodin v. Bank of America*, 2015 U.S. Dist. LEXIS 81318 (M.D. Fla June 23, 2015).

32.     The Defendants BOA and SLS regularly attempt to collect debts by contacting consumers by telephone, U.S. mail, and other instrumentalities of interstate commerce.  Both defendants BOA and SLS contacted Plaintiff in this case by telephone, including ATDS or "robo-calls" as well as the U.S.

Mail with the intent to harass.

33.     Defendant BOA does not maintain or follow a written policy of not calling a debtor after a verbal cease and desist. Defendant SLS does not maintain or follow a written policy of not calling a debtor after a verbal cease and desist has been issued.

34.     In numerous instances, including instances involving the Plaintiff, Defendants BOA and SLS called Plaintiff repeatedly or continuously with the intent to annoy, harass, or abuse. For example, Defendants: (i) continued to call even after being told, either orally or in writing, to stop; (ji) call multiple times per day or frequently over an extended period of time (for example, calling some persons three or more times per day); and (iii) call at the person's places of employment, even though the collectors know or should know that it is inconvenient for them to receive calls there.

35.     Notably, Defendant SLS did not distinguish between itself and Defendant BOA when making the offending calls, instead, Defendant SLS frequently stated or otherwise implied to Plaintiff that Defendant SLS was calling from Defendant BOA.

36.     The extent to which each defendant actually placed which offending calls is not yet fully known to Plaintiff due to the nature of the calls and Defendant SLSs' practice of calling as though Defendant SLS was calling from BOA regarding the collection of debts that Plaintiff clearly did not owe.

37.     In numerous instances, including instances involving the Plaintiff, Defendant BOA and Defendant SLS leave pre-recorded messages on the voicemail, answering machine, or messaging service of persons, in which Defendant BOA and SLS divulge that: (1) they are a debt collector, are attempting to collect a debt, or that the consumer owes a debt; and (2) the name of the consumer. For example, in numerous instances, Defendant BOA and SLS have left such messages for consumers, including the Plaintiff, even though the voicemail, answering machine, or messaging

service greeting either does not give the name of any person or announces that the voicemail, answering machine, or messaging service is for a person other than the consumer whom the Defendant BOA and SLS are trying to reach. In many instances, individuals other than the consumer hear the message, thereby disclosing consumers' alleged debts to persons other than the consumer without the prior consent of the consumer.

38.    Neither Defendant BOA nor Defendant SLS effectively uses cell phone scrubbing software and lists to identify when it they are calling a cell phone number and/or to identify when the phone number has been transferred to a new person.

39.    Neither Defendant BOA nor Defendant SLS accurately record nor do they maintain the storage of recordings of all incoming and outgoing calls.

40.    Defendant BOA has a corporate policy of using an automatic telephone dialing system or a pre-recorded or artificial voice message, just as it did when calling the Plaintiffs' aforementioned cellular telephone numbers, as described herein.  Likewise, SLS has a corporate policy of using an automatic telephone dialing system or a pre-recorded or artificial voice message, just as it did when calling the Plaintiffs' aforementioned cellular telephone numbers, as described herein.

41.    Despite actual knowledge of its wrongdoing, Defendant BOA and SLS still continue their campaign of abuse against consumers.

42.    All conditions precedent to the filing of this action have occurred or have otherwise been waived.

**COUNT I:  VIOLATIONS OF THE FLORIDA CONSUMER COLLECTION PRACTICES ACT—§§ 559.55-.785, FLA. STAT ("FCCPA")**

43.    Plaintiff re-alleges Paragraphs 1- 42 herein.

44.    On or near November 26, 2008, a letter was sent from attorney John Green, Esquire to

Countrywide Home Loan Servicing informing that he represented Plaintiff with respect to the mortgage debt at issue and to cease contact with him.

45.     BOA's representatives have spoken on the telephone to attorney John Green, Jr. on a minimum of three or more occasions during the time period between January 2012 to the present date and have been advised not to contact Mr. Linthicum.  Attorney John Green also contacted Defendant BOA on December 7, 2011 notifying Defendant BOA that he represented Plaintiff, yet the offending calls and contact continued as set forth above.  **(See Exhibit # 5)**

46.     In addition, RICHARD LINTHICUM repeatedly notified Defendant BOA to stop calling him and that he was represented by an attorney who was handling issues related to the collection of the mortgage loans. In addition, Plaintiff even complained about the offending contact in person at a the northeast branch of Defendant BOA in person, speaking to the brank manager and providing the branch manage with a copy of his mother's death certificate, yet the offending calls continued.

47.     On or about October 30, 2012, Plaintiff sent a letter to Defendant BOA and requested that they stop calling him daily and reminding him of his deceased mother's death.  (**A copy of the letter is attached hereto as Exhibit 6).**

48.      To  date,  Defendant  BOA, on its own behalf or by way of directing Defendant SLS as its agent, has  placed  approximately phone calls to e a c h  o f  Plaintiff's telephone numbers in an effort to collect the alleged debt at issue, and the calls continue through the date of filing of this Complaint (or such time as will be established after a thorough review of Defendants' records).  Collectively, Defendant BOA and Defendant SLS has placed hundreds more to Plaintiff's residential telephone number, despite having received repeated cease and desist instructions.

**49.**     On numerous occasions, Plaintiff answered the Defendant BOA or Defendant SLS phone calls in an attempt to be removed from the call list, informing the Defendants not to call his cellular

telephone number and residential telephone number any longer.  Defendant SLS followed up with letters dated October 29, 2013 and December 10, 2013 acknowledging that they had received the cease and desist requests, yet they still continue to call Plaintiff's telephone numbers. **(See, Composite Exhibit 3).**

**50.**     Defendant BOA sent Plaintiff by mail monthly, the latest being July 2015, a demand for payment on the revolving line of credit.

51.     Each of Plaintiff's conversations with the Defendant BOA and Defendant SLS demanded an end to the harassment and continued contact, but Plaintiff was ignored.

52.     At all times material to this action Defendant BOA was and is subject to and must abide by the law of Florida, including section 559.72, Florida Statutes.  Likewise, at all times material to this action, Defendant SLS was and is subject to and must abide by the law of Florida, including section 559.72, Florida Statutes.

53.     Defendant BOA engaged in an act or omission prohibited under section 559.72(7), Florida Statutes, by willfully communicating with a debtor, alleged debtor <u>or any member of their family</u> with such frequency as can reasonably be expected to harass them.   Likewise, Defendant BOA engaged in an act or omission prohibited under section 559.72(7), Florida Statutes, by willfully communicating with a debtor, alleged debtor <u>or any member of their family</u> with such frequency as can reasonably be expected to harass them.

54.     Defendant BOA engaged in an act or omission prohibited under section 559.72(7), Florida Statutes, by willfully engaging in other conduct which can reasonably be expected to abuse or harass the Plaintiff.   Defendant SLS engaged in an act or omission prohibited under section 559.72(7), Florida Statutes, by willfully engaging in other conduct which can reasonably be expected to abuse or harass the Plaintiff.

11

55.     Defendants BOA and SLS engaged in an act or omission prohibited under section 559.72(9), Florida Statutes, by attempting to enforce a debt when such person knows that the debt is not legitimate, or asserting the existence of some other legal right when such person knows that the right does not exist.

56.     Defendant BOA and Defendant SLS each engaged in an act or omission prohibited under section 559.72(18), Florida Statutes, by communicating with the Plaintiff in connection with the collection of a debt when Defendant knew Plaintiff was represented by an attorney with respect to the debt and had knowledge of the attorney's name and address.

57.     Despite having received the above described letters, demanding that Defendant BOA and SLS cease and desist all communication with Plaintiffs regarding the mortgage loan debt at issue, and notifying Defendant BOA and Defendant SLS that Plaintiff was represented by counsel with respect to the subject debts, Defendant BOA and Defendant SLS proceeded undeterred in their campaign of intentional harassment and abuse of the Plaintiff in an effort to collect the debt, including but not limited to:

    a.     Calling Plaintiff's aforementioned cellular telephone numbers and residential telephone number several times per day and on back to back days through the present time (or such time as will be established after a thorough review of Defendant BOA and Defendant SLS's' records). In most instances, Defendant BOA and Defendant SLS would place a call to each of the above described telephone number within minutes of each other;

    b.     Calling Plaintiff's aforementioned cellular telephone numbers and residential telephone number from an automated telephone dialing system and leaving pre-recorded messages on Plaintiffs' answering machine and respective voice mail boxes, identifying Plaintiff and stating that the message was left in "an attempt to collect a debt";

c.      Calling Plaintiff's aforementioned cellular telephone numbers and residential telephone number and hanging up either prior to or as soon as Plaintiffs, members of Plaintiff's household, or the Plaintiff's answering machine or voice mail boxes answered the call;

d.      Calling from numerous different telephone numbers that appeared on Plaintiff's caller ID as someone or some entity other than Defendant BOA or Defendant SLS, or with no identification;

58.     Plaintiff does not owe any debt that the Defendant BOA or Defendant SLS had the right to collect.

59.     The thousands of telephone calls made by Defendant BOA and SLS to Plaintiff a n d  t h e  e n d l e s s  b a r r a g e  o f  d e b t  c o l l e c t i o n  l e t t e r s  m a i l e d  t o  P l a i n t i f f, h a v e  caused Plaintiff stress, aggravation, anxiety, insomnia, embarrassment and the constant reminder of his mother's death, such that they are harassing.

60.     Defendant BOA was not entitled to contact Plaintiff after having been notified that Plaintiff did not want Defendant to contact Plaintiff again.

61.     Defendant SLS was not entitled to contact Plaintiff after having been notified that Plaintiff did not want either Defendant to contact Plaintiff again.

62.     Defendant BOA's business practices and actions were either intentional or grossly negligent as the Plaintiff did everything in his power to notify Defendants that he had an attorney, did not owe a debt and  that he did not want to be contacted.  Defendant SLS's business practices and actions were either intentional or grossly negligent as the Plaintiff did everything in his power to notify both Defendants that he had an attorney, did not owe a debt and  that he did not want to be contacted.

63.     Defendant B O A  failed to follow any reasonable debt collection standards that would prevent it from repeatedly calling Plaintiff after being advised that he was not the person they were

trying to call. Instead, despite multiple warnings from Plaintiff, Defendant BOA intentionally disregarded Plaintiff's attempts to correct the situation, which has caused Plaintiff a high degree of emotional distress. Defendant SLS failed to follow any reasonable debt collection standards that would prevent it from repeatedly calling Plaintiff after being advised that he was not the person they were trying to call. Instead, despite multiple warnings from Plaintiff, Defendant SLS intentionally disregarded Plaintiff's attempts to correct the situation, which has caused Plaintiff a high degree of emotional distress.

64.     Plaintiff has been stressed, embarrassed, and shocked at Defendant BOA's and Defendant SLS's ongoing debt collection calls for debts that he did not owe and the constant reminder of his mother's death that it has caused him a tremendous amount of anxiety and depression. [1]

65.     Plaintiff has incurred actual damages and incurred attorney's fees and costs in pursuing this action.

**COUNT II:**

**VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT—15 U.S.C. § 1692** *et seq.*

66.     Plaintiff re-alleges Paragraphs 1- 42 herein.

67.     The Fair Debt Collection Practices Act 15 U.S.C. § 1692 (FDCPA) broadly prohibits debt collectors from engaging in harassing, oppressive, or abusive conduct, from using false, deceptive,

---

[1] A plaintiff may recover actual damages for emotional distress under the FDCPA and FCCPA. *Minnifield v. Johnson & Freedman, LLC, 448 F. App'x 914, 916 (11th Cir. 2011)* (finding that a plaintiff can recover for emotional distress under the FDCPA); *Fini v. Dish Network L.L.C., 955 F. Supp. 2d 1288, 1299 (M.D. Fla. 2013)* (finding the same under the FCCPA). Also see *Goodin v. Bank of America*, 2015 U.S. Dist. LEXIS 81318 (M.D. Fla June 23, 2015)

and misleading misrepresentations, or from collecting debts using unfair or unconscionable means. *See 15 U.S.C. §§ 1692d, 1692e, 1692f.*

68.     *15 U.S.C. § 1692d(5)*  prohibits a debt collector from "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number."  Defendant SLS functioned as a debt collector in attempting to collect a debt against Plaintiff that Plaintiff did not owe, in regards to a defaulted loan. Defendant SLS repeated asserted that Plaintiff owed Defendant SLS money, though Plaintiff did not owe Defendant SLS any money.

69.     Plaintiff is "consumer" as that term is defined by 15 U.S.C. § 1692a(3) and a person with standing to bring a claim under the FDCPA against BOA by virtue of being directly affected by a violation of the Act, to wit  Individually and as the Successor Trustee of the Dorothy T. Linthicum Trust has been subjected to Defendant BOA's improper debt collection activities that include calls and letters after being told to stop.  SLS's improper debt collection activities included calling Plaintiff at after being told verbally and in writing multiple times.

70.     The  account  that  the  Defendant  BOA  w a s   attempting  to  collect  money  on  is  a  "debt" within  the  meaning  of  section  15  U.S.C.  §  1692a(5)  address  an  obligation  of  a  consumer  to  pay money arising out of a transaction in which the money, property, insurance, or services which were the subject of the transaction were primarily for personal, family, or household purposes because it related to a revolving line of credit and an assigned mortgage in default.

71.     The account that the Defendant SLS  w a s   attempting to collect money on is a "debt" within the  meaning  of  section  15  U.S.C.  §  1692a(5)  address  an  obligation  of  a  consumer  to  pay  money arising out of a transaction in which the money, property, insurance, or services which were the subject of the transaction were primarily for personal, family, or household purposes because it

related to an assigned mortgage in default.

72.     Despite having received the above described complaints, cease and desist instructions and verbal revocations, demanding that both Defendant SLS and BOA cease and desist all communication with Plaintiff, regarding the revolving line of credit, mortgage debt and mortgage deficiency at issue, and notifying Defendants SLS and BOA that Plaintiff was represented by counsel with respect to the subject debts, Defendant SLS and BOA proceeded undeterred in their campaign of intentional harassment and abuse of the Plaintiff in an effort to collect Plaintiff's deceased mother's debt, including but not limited to:

a.      Calling Plaintiff's aforementioned cellular telephone numbers and residential telephone number several times per day and on back to back days through the present time (or such time as will be established after a thorough review of Defendant SLSs' and BOA's records). In most instances, Defendant SLS and BOA would place a call to each of the above described telephone number within minutes of each other;

b.      Calling Plaintiff's aforementioned cellular telephone numbers and residential telephone number from an automated telephone dialing system and leaving pre-recorded messages on Plaintiffs' answering machine and respective voice mail boxes, identifying Plaintiff and stating that the message was left in "an attempt to collect a debt";

c.      Calling Plaintiff's aforementioned cellular telephone numbers and residential telephone number and hanging up either prior to or as soon as Plaintiffs, members of Plaintiff's household, or the Plaintiff's answering machine or voice mail boxes answered the call;

d.      Calling from numerous different telephone numbers that appeared on Plaintiff's caller ID as someone or some entity other than Defendant SLS or BOA, or with no identification;

73.     Plaintiff personally does not owe any debt that the Defendant SLS or BOA had the right to

16

collect.

74.     The thousands of telephone calls made by Defendants SLS and BOA to Plaintiff a n d  t h e  e n d l e s s  b a r r a g e  o f  d e b t  c o l l e c t i o n  l e t t e r s  m a i l e d  t o  P l a i n t i f f ,  h a v e  caused Plaintiff stress, aggravation, anxiety, insomnia, embarrassment, constantly reminded of the death of his mother, such that they are harassing.

75.     SLS and BOA were not entitled to contact Plaintiff after having been notified that Plaintiff did not want either one to contact Plaintiff again and continue to remind him every day regarding the death of his mother for years thereafter.

76.     Both SLS and BOA continued to send debt collection letters after they acknowledged that they had received Plaintiff's correspondence to cease contact.

77.     Both SLS and BOA's actions, individually and jointly, were either intentional or grossly negligent as the Plaintiff did everything in his power to notify SLS and BOA that he did not want to be contacted.   Both SLS and BOA, individually and jointly failed to follow any reasonable debt collection standards that would prevent it from repeatedly calling Plaintiff after being advised that he was not the person that owed the debt and the constant reminder of his mother's death. Instead, despite multiple warnings from Plaintiff, Both SLS and BOA individually and jointly intentionally disregarded Plaintiff's attempts to correct the situation, which has caused Plaintiff a high degree of emotional distress.

78.     As a result of Defendant SLSs' and BOA's abusive actions, Plaintiff suffers from anxiety, sleeplessness, loss of appetite, and other such manifestations of emotional distress.

79.     Plaintiff has been stressed, embarrassed, and shocked at Defendant SLSs' and BOA's ongoing debt collection calls for debts that he did not owe and the constant reminder of his mother's

death that it has caused him to constantly worry and be depressed. [2]

80.     Plaintiff has incurred actual damages and incurred attorney's fees and costs in pursuing this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that:

a)   judgment be entered against Defendant BOA pursuant to Fla. Stat. 559.77(2) for an award of statutory damages of $1,000.00; an award of $50,000.00 in actual damages for emotional distress and $1 million in punitive damages, and for an award of litigation costs and reasonable attorney's fees, for injunctive and declaratory relief regarding further collection attempts; and all other relief to which Plaintiff is entitled;

b)   judgment be entered against Defendant SLS pursuant to Fla. Stat. 559.77(2) for an award of statutory damages of $1,000.00; an award of $50,000.00 in actual damages for emotional distress and $1 million in punitive damages, and for an award of litigation costs and reasonable attorney's fees, for injunctive and declaratory relief regarding further collection attempts; and all other relief to which

---

[2] A plaintiff may recover actual damages for emotional distress under the FDCPA and FCCPA. *Minnifield v. Johnson & Freedman, LLC, 448 F. App'x 914, 916 (11th Cir. 2011)* (finding that a plaintiff can recover for emotional distress under the FDCPA); *Fini v. Dish Network L.L.C., 955 F. Supp. 2d 1288, 1299 (M.D. Fla. 2013)* (finding the same under the FCCPA). Also see *Goodin v. Bank of America*, 2015 U.S. Dist. LEXIS 81318 (M.D. Fla June 23, 2015)

Plaintiff is entitled;

c)   judgment be entered against Defendant BOA for an award of statutory damages of $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A); an award of $50,000.00 in actual damages for emotional distress and $1 million in punitive damages, and for an award of litigation costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3); injunctive and declaratory relief regarding further collection attempts; and all other relief to which Plaintiff is entitled;

d)   judgment be entered against Defendant SLS for an award of statutory damages of $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A); an award of $50,000.00 in actual damages for emotional distress and $1 million in punitive damages, and for an award of litigation costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3); injunctive and declaratory relief regarding further collection attempts; and all other relief to which Plaintiff is entitled;

Such other and further relief that the Court deems just and proper.


Respectfully submitted on April 28, 2016.

/s/**Lisa Wilcox/**

By:_____
Lisa R. Wilcox, Esquire
FBN: 697291
721 First Ave. N.
Suite 100
St. Petersburg, Florida 33701
727-821-1707
lisa@wilcoxlawpa.com


**/s/W. John Gadd, Esquire**
W. John Gadd, Esquire
FBN: 463061

Gadd Law, PA - Main Office
2727 Ulmerton Road, Suite 250
Clearwater, Florida 33762
Office: 727.524.6300
WJG@MazGadd.com
Co-Counsel for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on  April 28, 2016 , I electronically filed the foregoing with the Clerk of the

Court using the CM/ECF. I also certify that the foregoing document is being served this day on all

counsel either via transmission of Notices of Electronic Filing generated by CM/ECF or in some

other authorized manner for those counsel or parties who are not authorized to Receive

electronically Notices of Electronic Filing.


    _s/Lisa Wilcox/_

Lisa R. Wilcox, Esquire